# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDISON LEARNING, INC.                       :
                    Plaintiff,              :              CIVIL ACTION
                                            :              No. 11-7190
                    v.                      :
                                            :
THE SCHOOL DISTRICT OF                      :
PHILADELPHIA,
                    Defendant.              :

**October, 21, 2014**                                **Anita B. Brody, J.**


Plaintiff Edison Learning, Inc. ("Edison Learning" or "Edison") brings suit against Defendant School District of Philadelphia ("School District") for breach of contract, claiming that the School District must reimburse Edison Learning for its legal fees and settlement costs from a prior suit.  The School District moves for summary judgment, claiming sovereign immunity.  The School District has filed a counterclaim seeking its own attorneys' fees from Edison Learning for the same prior suit.  Both the School District and Edison Learning move for summary judgment on the counterclaim.  For the reasons discussed below, I will grant the School District's motion for summary judgment on Edison's claims, grant Edison Learning's motion for summary judgment on the School District's counterclaim, and deny the School District's motion on its counterclaim.[1]

---

[1] Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332.

I.       **BACKGROUND**

A.  **The Agreement**

Edison Learning is a private education services contractor that partners with school districts across the country to administer their public schools.  On July 29, 2002, Edison entered into one such agreement with the School District of Philadelphia called the Educational Services Agreement ("ESA").  The ESA obligated Edison to provide curriculum management, administrative support, and academic support at a number of Philadelphia public schools, including the John B. Stetson Middle School ("Stetson").

Three aspects of the ESA are relevant to the instant lawsuit.  First, the contract between Edison and the School District carefully delineates the obligations of each entity in the relevant schools.  Specifically, with respect to school security, the ESA states that:

> [The] School District shall at School District's sole expense provide *all appropriate safety and police protection* to all students and employees in [relevant schools] during school hours.

Pl.'s Resp. to Def.'s Mot. Summ. J., ECF No. 56, Ex. 1, at 34 (emphasis added).

The ESA also contains provisions allocating liability between the two parties in the event of a lawsuit.  Section 12.2, labeled "Indemnification," entitles the School District to payment for any liability it incurs as a result of Edison Learning's negligent or wrongful conduct.  It states in relevant part:

> [Edison Learning] hereby agrees to indemnify the School District . . . and agrees to hold [the School District] harmless from any and all liabilities, losses, . . . lawsuits . . . and costs and expenses (including without limitation reasonable expenses of investigation and reasonable attorneys' fees . . .) incurred or suffered by [the School District] arising out of the willful misconduct or negligent act or negligent omission of [Edison Learning] in connection with the performance of its obligations or the delivery of Educational Services contained in this agreement . . . .

*Id.*, Ex. 1, at 47.

Finally, the ESA contains two provisions purporting to maintain the School District's statutory sovereign immunity:

> Section 12.5 provides that nothing in the agreement "shall be considered as a waiver of . . . sovereign or governmental immunity [of] the School District . . . ."
>
> Section 15.2 reiterates that "[t]he School District does not waive any immunity or defense . . . as a result of the execution of this Agreement and performance of the functions or obligations described herein. Nothing herein shall waive or amend any defense . . . under the Pennsylvania Political Subdivision Tort Claims Act."

*Id.*, Ex. 1., at 48, 55 (citations omitted).

## B. The *Viruet* Incident and Litigation

On November 16, 2004, Christopher Viruet, a sixth grade student at Stetson Middle School, asked his math teacher for a hall pass to use the restroom. While Viruet was in the restroom Angel Cuevas, another Stetson student, approached Viruet, threatened him, chased him through the halls to a secluded area of the school, and sexually assaulted him. *See id.*, Ex. 7, at 35-48.

On September 13, 2006, Viruet, through his guardian, filed suit in the Court of Common Pleas of Philadelphia County against Edison Learning and the School District (the "*Viruet* litigation"). Viruet asserted a variety of tort claims against both Edison Learning and the School District, claiming that they negligently and intentionally failed to ensure a safe school environment and allowed the assault to take place. *See id.*, Ex. 15 (including negligent, reckless, intentional and outrageous conduct, assault and battery, and infliction of emotional distress).

As the suit progressed, Edison Learning and the School District decided it would be advantageous to consult and form a coordinated defense strategy. *See, e.g.*, *id.*, Ex. 25. During these discussions, Edison Learning asserts that its general counsel repeatedly requested that the

School District indemnify it for any settlement costs the *Viruet* litigation might produce.  *Id.*, Ex. 26, at 45.  To this effect, on November 9, 2007 Edison Learning's general counsel sent a draft letter to the School District which included an agreement that the School District would indemnify Edison Learning.  *Id.*, Ex. 27.  The School District did not sign this draft agreement. *Id.*, Ex. 26, at 88.

On January 31, 2008, Edison Learning and the School District ultimately codified their discussions in a standstill agreement.  *See id.*, Ex. 30.  The agreement provided that neither party would pursue cross-claims during the *Viruet* suit and that the agreement was "without prejudice to the rights of either Edison [Learning] or the School District to seek contribution or indemnification."  *Id.*

Four days later, on February 4, 2008, the School District filed for summary judgment on all claims against it.  *See* Dist's Mot. for Summ. J. on Pl.'s Claims, ECF No. 48, Ex. 5.  In its motion, the School District pursued two separate theories.  First, it claimed that Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA") provided immunity from suit and that the Viruet claims did not fall within any of the PSTCA's enumerated exceptions.  *Id.*, Ex. 5, at 6-8, 12-19.  Second, it claimed it had no duty to protect Viruet from harm done by third parties.  *Id.*, Ex. 5, at 8-12.

The Court of Common Pleas ultimately granted the School District's motion in its entirety and dismissed all claims against the School District with prejudice.  *See* ECF No. 56, Exs. 18, 19.  No memorandum accompanied the court's determination; the court did not specify the grounds on which it granted summary judgment, nor did it make findings of fact.  *Id.*

Viruet's claims against Edison Learning proceeded to trial.  Edison Learning claims that, notwithstanding the fact that the School District had been dismissed from the suit, the School

District and Edison Learning regularly communicated about Edison Learning's settlement offers with Viruet with the expectation that the School District would ultimately indemnify Edison if a settlement was reached. *Id.*, Ex. 26, at 82-3, 137-138.

On June 26, 2008---the third day of trial---Edison Learning and Viruet reached an agreement to settle the case. One year later, the Orphan's Court Division of the Court of Common Pleas approved the settlement, ending the suit. *Id.*, Ex. 34.

Both Edison and the School District now seek to recoup their expenses from the *Viruet* litigation. On November 17, 2011, Edison filed the instant action. Compl., ECF No. 1. Edison seeks its legal fees and costs of settlement pursuant to two related theories. First, it alleges that the School District breached its contractual obligation to provide "appropriate safety and police protection" to Viruet, which resulted in the *Viruet* litigation and Edison's settlement of the claims against it. *Id.* at 8-9. Second, Edison claims that during the *Viruet* litigation the School District orally agreed to indemnify Edison for the lawsuit. *Id.* at 9-10.

The School District has counterclaimed for its own attorneys' fees from the *Viruet* litigation. It seeks recovery pursuant to the indemnification provision (section 12.2) of the ESA. *See* Answer, ECF No. 12, at 7-9.

The School District has moved for summary judgment on Edison Learning's claims and has also moved for summary judgment on its counterclaim. Edison Learning opposes summary judgment on its claims, and has filed its own motion for summary judgment on the School District's counterclaim.

## II.  Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  The nonmoving party must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.* at 322. In ruling on a motion for summary judgment, the court must draw all inferences from the facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  However, the nonmoving party may not "rely merely upon bare assertions" to support its claims.  *Fireman's Ins. Co. of Newark, N.J. v. Du Fresne*, 676 F.2d 965, 969 (3d Cir. 1982).

In essence, the inquiry at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251--52 (1986).  "The rule is no different where there are cross-motions for summary judgment." *Lawrence v. City of Philadelphia,* 527 F.3d 299, 310 (3d Cir. 2008).

Finally, a federal court sitting in diversity is required to apply the substantive law of the state whose law governs the action.  *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938). The parties agree that Pennsylvania law governs this dispute. "When ascertaining Pennsylvania law,

the decisions of the Pennsylvania Supreme Court are the authoritative source." *Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 216 (3d Cir. 2010).

### III.   Discussion

There are three pending motions for summary judgment.  One, filed by the School District, opposes Edison Learning's claims.  The remaining two are cross-motions for summary judgment regarding the School District's counterclaim.

#### A.  Edison Learning's Claims

Edison Learning seeks the costs of settlement and attorneys' fees deriving from the *Viruet* litigation.  The School District seeks to have these claims dismissed on a variety of grounds.  Because I conclude that the School District's sovereign immunity bars both of Edison Learning's theories of recovery, I do not consider the School District's other arguments.[2]

Because the School District is an agency of the City of Philadelphia, it is protected by sovereign immunity from suit.  *See Wells v. Harrisburg Sch. Dist.*, 884 A.2d 946, 948 (Pa. Commw. Ct. 2005) (concluding school districts are covered by the PSTCA).  The Political Subdivision Tort Claims Act confers this immunity, and provides that "no local agency shall be liable for any damages on account of any injury to a person or property" unless the injury was "caused by the negligent acts of the local agency" and the negligence falls within one of the PSTCA's eight enumerated exceptions.  42 Pa. Cons. Stat. Ann. §§ 8541-8542.

The School District argues that this immunity bars Edison's claims.  As the name suggests however, the PSTCA applies solely to tort claims, not breach of contract claims.  *See Meyer v. Cmty. Coll. of Beaver Cnty.*, 2 A.3d 499, 503 (Pa. 2010).  Therefore, Edison contends

---

[2] The School District's briefs periodically refer to a report prepared by Michael I. Levin to buttress its claims.  *See, e.g.,* ECF No. 48, at 18.  The grounds on which I choose to rule render the majority of this report irrelevant.  I decline to consider the remainder of Levin's testimony on the grounds that it is inadmissible, conclusory expert testimony on purely legal issues and not evidence of trade usage.

that it is seeking recovery for a contractual claim. It claims that the School District did not follow through with its promise in the ESA to provide to Edison with "appropriate safety and police protection" at Stetson, and that breach caused the assault and subsequent *Viruet* litigation. Put another way, Edison argues that its claim cannot sound in tort because the parties' contract required the School District to protect its students notwithstanding any common law duties.

But the Pennsylvania Supreme Court has ruled that "'the legislature never intended for a local agency to be held liable for tort damages under a contract theory.'" *McShea v. City of Philadelphia*, 995 A.2d 334, 341 (Pa. 2010) (quoting *Sims v. Silver Springs-Martin Luther Sch.*, 625 A.2d 1297, 1302 (Pa. Commw. Ct. 1993)); *see also Matarazzo v. Millers Mut. Grp., Inc.*, 927 A.2d 689, 693 (Pa. Commw. Ct. 2007) ("[A] plaintiff may not avoid the defense of governmental immunity by couching a claim for the recovery of tort damages under a breach of contract theory."); *Schreck v. N. Codorus Twp.*, 559 A.2d 1018, 1022-23 (Pa. Commw. Ct. 1989) ("This court has previously rejected attempts to circumvent the above immunity provisions of [the PSTCA] by fashioning a cause of action in assumpsit which is in reality nothing more than a cause of action sounding in tort."), *appeal dismissed,* 585 A.2d 464 (1991).

*Sims*, the case from which the Pennsylvania Supreme Court lifted its language in *McShea*, is indistinguishable from the current action. In *Sims*, a young boy who drowned in a pool sued both the pool's lessor, an entity not covered by the PSTCA, and the lessee, a local agency protected by sovereign immunity. *Sims*, 625 A.2d at 1299. The Commonwealth Court rejected the lessor's argument that the local agency had assumed tort liability in the lease agreement, holding that sovereign immunity barred that outcome. Because the lessor sought recovery from the local agency for the boy's tort damages and "none of the eight exceptions [to

the PSTCA] are contract exceptions," summary judgment for the local agency was proper.  *Id.* at 1302.

The policy justifications for the PSTCA reinforce the conclusion that some nominal contract claims must nonetheless be seen as tort claims.  The statute provides that "no local agency shall be liable for *any*" tort damages, regardless of whether the victim seeks them directly or a third party seeks those same damages by contract.  42 Pa. Cons. Stat. Ann. § 8541 (emphasis added); *see also City of Phila. Police Dept. v. Gray*, 633 A.2d 1090, 1093 (Pa. 1993).  "The clear intent of the Tort Claims Act was to *insulate* the government from exposure to tort liability," regardless of who actually sought to collect those damages from a local agency.  *McShea*, 995 A.2d at 341 (citing *Dean v. Pa. Dep't of Transp.*, 751 A.2d 1130, 1132 (Pa. 2000)) (emphasis added).  It is an "absolute defense," *id.*, meant to protect a local government from being "engulfed in a tidal wave of liability."  *In re Upset Sale of Properties,* 560 A.2d 1388, 1389 (Pa. 1989).

Edison Learning's claims are properly construed as recovery for Viruet's tort damages, not for a breach of contract.  Notwithstanding the promises the School District may have made to Edison Learning, the proximate cause of Edison Learning's damages was the *Viruet* litigation.  That lawsuit sounded in tort; Viruet exclusively alleged tort claims against the two entities.  By seeking to recover its costs of settlement Edison Learning attempts to shift the costs of that action back to the School District.  Edison's causes of action serve as an end run around the PSTCA's carefully guarded liability shield by indirectly exposing the School District to the exact same "possibility of unusually large recover[y]" inherent in tort cases.  *Smith v. City of Philadelphia,* 516 A.2d 306, 311 (Pa. 1986) (plurality opinion).

9

Edison argues that, even if sovereign immunity applies, the School District waived this defense when it agreed to provide adequate police protection in the ESA and when it allegedly agreed to indemnify Edison during the *Viruet* suit.  These arguments fail.  First, sections 12.5 and 15.2 of the ESA both explicitly preserve the School District's right to assert the PSTCA.  More importantly, both arguments fail because PSTCA immunity cannot be waived.  "Tort immunity is a non-waivable, absolute defense."  *McShea*, 995 A.2d at 341.  The Pennsylvania Supreme Court has held unequivocally that local agencies may not waive their PSTCA immunity by ordinance.  *Gray*, 633 A.2d at 1093.  In fact, "*any procedural devise* that could render a governmental agency liable beyond the exceptions granted by the legislature" is prohibited.  *Id.* (emphasis added).[3]  It is most unlikely that the Pennsylvania Supreme Court would prevent a legislative body from waiving sovereign immunity by ordinance but allow the School District's general counsel to do so by contract or oral representation.[4]

Edison next argues that the *Viruet* litigation fell under the "real estate" exception to the PSTCA, which allows liability to be imposed against a governmental entity for actions arising out of the negligent "care, custody or control of real property in possession of the local agency."

---

[3] Edison makes much of the fact that *Gray* considered sovereign immunity "directly analogous" to workmen's compensation.  *Gray*, 633 A.2d at 1093.  As Edison points out, in that context, absolute immunity of the employer from the suits by the employee does not prohibit contractual indemnification claims between employers.  *See Kiewit E. Co. v. L&R Constr. Co.*, 44 F.3d 1194, 1200 (3d Cir. 1995).  While true, the analogy was not the only basis for the *Gray* decision, which relied heavily on the legislative intent and unequivocal language of the PSTCA.  *Gray*, 663 A.2d at 1093.

[4] Edison relies heavily on *Ludwin v. PATCO*, 517 A.2d 1006 (Pa. Commw. Ct. 1986) (en banc), the only case to conclude that Edison's proposed waiver is possible.  The court in *Ludwin* held that a local agency's contractual agreement to indemnify a private entity functioned as a limited waiver of sovereign immunity for the underlying tort claims indemnified.  *Id.* at 1010.  However, the Commonwealth Court decided *Ludwin* seven years before the Pennsylvania Supreme Court issued *Gray*.  Since then, no case has cited *Ludwin* with approval, and many have called it into doubt.  *See, e.g., Lee v. Beaver Cnty.*, 2192 C.D. 2012, 2013 WL 3545834, at *3 (Pa. Commw. Ct. July 15, 2013) appeal denied, 84 A.3d 1065 (Pa. 2014) ("*Ludwin* lived for seven short years before *City of Philadelphia v. Gray* and yet in the thirty-years since we have been called upon to repeatedly stress that *Ludwin* is a hobbled vestige lacking validity; today, we do so again."); *Rodriguez v. City of Philadelphia, Dep't of Human Servs.*, 657 A.2d 105, 108 (Pa. Commw. Ct. 1995) (cited with approval by Pennsylvania Supreme Court in *McShea*).

42 Pa. Cons. Stat. Ann. § 8542(b)(3).  Specifically, Edison argues that dysfunctional security cameras and the secluded area where the assault ultimately occurred constitute defects in the Stetson school building.  *See* ECF No. 56, at 27.

This argument also fails as a matter of law.  Although negligence is typically a question for the jury, ample authority states that the exception does not apply when the alleged defect merely "facilitate[s] an injury by a third party."  *Grieff v. Reisinger*, 693 A.2d 195, 197 (1997); *see also Mascaro v. Youth Study Ctr.*, 523 A.2d 1118 (Pa. 1987) (barring claim by victims of escaped detainee of state detention center that center was negligently maintained and allowed escape); *Cotter v. School Dist. Of Philadelphia*, 562 A.2d 1029 (Pa. Cmwlth. 1989) (real estate exception did not cover claims against school district for allowing one student to sexually assault another); *Scott v. Willis*, 543 A.2d 165, 167 (Pa. Cmwlth Ct. 1988) (sexual assault victim's claim barred despite claiming that isolated room facilitated the assault and constituted a defect of real estate).

Finally, Edison argues that the School District is equitably estopped from asserting its PSTCA immunity.  Edison alleges that the School District's repeated representations that the School District would indemnify Edison unfairly induced Edison to bear a disproportionate amount of the defense costs in the *Viruet* litigation and settle the suit.  ECF No. 56, at 16.

An equitable estoppel argument is available when one party's "misleading words, conduct, or silence" cause another to reasonably rely to her detriment on the misrepresentation. *Chester Extended Care Ctr. v. Pa. Dep't of Pub. Welfare*, 586 A.2d 379, 382 (Pa. 1991).  A misled party cannot assert estoppel if she had a duty to inquire and the opportunity to discover the truth.  *Id*.  Equitable estoppel "is [a doctrine] of fundamental fairness, and whether it is

applicable is dependent upon the particular facts of each case." *Homart Dev. Co. v. Sgrenci*, 662 A.2d 1092, 1100 (Pa. Super. Ct. 1995).

Edison has a uniquely heavy burden in this case because it is trying to hold the School District to a position that is a violation of Pennsylvania law. As discussed, local agencies may not waive their PSTCA protection. *McShea*, 995 A.2d at 341; *Gray*, 633 A.2d at 1093. Applying equitable estoppel on the basis of the School District's representations is merely waiver by another name. "Generally, a party may not assert equitable estoppel to prevent the application of a statutory provision," *Carroll v. Phila. Bd. of Pensions & Ret. Mun. Pension Fund*, 735 A.2d 141, 144 (Pa. Commw. Ct. 1999), because "allow[ing] an error of a government employee to override the enforcement of a statute would be tantamount to amending the statute." *Borkey v. Twp. of Centre*, 847 A.2d 807, 812 (Pa. Commw. Ct. 2004).

In *Chester Extended Care Center v. Commissioner of the Department of Public Welfare*, the Pennsylvania Supreme Court permitted estoppel in violation of statutory provisions because it found that doing so was the only way to avoid a "fundamental injustice." 586 A.2d at 383. In *Chester*, the State Department of Public Welfare determined that a nursing home was ineligible to continue receiving certain Medicare funds---the entirety of the facility's business. *Id.* at 380. Despite notifying the facility, DPW repeatedly led the facility to believe its eligibility would be reinstated by continuing to make payments for over five months and even continuing to send patients there. *Id.* at 383. When DPW subsequently asked that the payments be returned and the facility shut down, the facility asserted equitable estoppel. The Pennsylvania Supreme Court held there was "no dispute" that the facility had been misled, despite having done "everything possible to inquire into and protect" its eligibility. *Id.* at 382-83.

Such a fundamental injustice is not present here because Edison's claim is far weaker. *See Wayne Moving & Storage of N.J., Inc. v. Sch. Dist.*, 625 F.3d 148, 156 (3d Cir. 2010) (looking to strength of claim to evaluate injustice).  First, Edison relies on weak circumstantial evidence to show misleading statements by the School District.  Only two written documents in the record reference any right to indemnification.  The first, the November 9, 2007 draft indemnification agreement, the School District refused to sign.  ECF No. 56, Ex. 27; *see also id.*, Ex. 26, at 46.  The second, the properly executed joint defense agreement, stated merely that it was "without prejudice" to the indemnification rights of either Edison and the School District, without describing what, if any, the contours of those rights were.  *Id.*, Ex. 30.  The remaining evidence is deposition testimony of Edison's officials about the purported contents of communications between the two parties.  Even if, as Edison maintains, it had a "standing request" for indemnification that it believed "would be addressed after the *Viruet* litigation ended," it should have known that clear evidence of the School District's assent to that request would be necessary to enforce its claim.  Pl.'s Sur-Reply, ECF No. 62, at 10.

Second, Edison had a duty to investigate the ability of the School District to enter into an indemnification agreement, undercutting its reliance claim.[5]  "'One who contracts with a school district must, at his peril, know the extent of the power of the school district's officers in making the contract.'"  *Pittsburgh Baseball, Inc. v. Stadium Auth.*, 630 A.2d 505, 509 (Pa. Commw. Ct. 1993) (quoting *Sch. Dist. v. Framlau Corp.*, 328 A.2d 866, 870 (Pa. Commw. Ct. 1974)).

---

[5] Edison claims that it is entitled to reasonably rely on the ESA, which provides that the School District "has authority under state law to execute and deliver this Agreement and to perform all obligations" enumerated in the agreement.  ECF No. 56, Ex 1, at 40.  Even if that were true, Edison does not seek indemnification pursuant to the ESA.  Edison's Response claims that the School District agreed to indemnify it pursuant to ESA section 12.2, but that cannot be so.  *Id.* at 18.  As discussed, section 12.2 only grants the *School District* a right to indemnification from *Edison Learning*, not the other way around.  *Id*, Ex. 1, at 47.  Indeed, it is the basis of the School District's counterclaim.  Moreover, if the ESA did entitle Edison to indemnification it is unclear why such extensive discussions during the *Viruet* litigation would have been necessary to pin down a pre-existing right.

Ultimately, this case is not one of the "unusual situations" mandating equitable estoppel of a statutory provision. *Carroll*, 735 A.2d at 146. Even drawing all favorable inferences for Edison Learning, the unequivocal misrepresentations of *Chester* are not present and Edison had a duty to research the capacity of the School District to enter indemnification agreements. Most importantly, the strong policy of the Pennsylvania Supreme Court disfavoring waiver of PSTCA immunity counsels against application of equitable estoppel, no matter what the School District represented. *See Storms ex rel. Storms v. O'Malley*, 779 A.2d 548, 562 (Pa. Super. Ct. 2001) ("Even assuming that counsel for [the government] affirmatively agreed to waive [its] right to a statutory setoff, we find that estoppel does not prevent [the government] from now asserting this limit on its liability. Counsel . . . had no authority to enter into such an agreement."). The School District is not estopped from asserting its sovereign immunity.

In conclusion, Edison's claims are properly construed as recovery for Viruet's tort damages, not as a breach of contract. The School District cannot waive its sovereign immunity by contract and the action does not fall within any exception to the PSTCA. Furthermore, Edison cannot satisfy the high burden required for equitable estoppel. The School District is entitled to summary judgment on Edison's claims.

## B. The School District's Counterclaim

The School District seeks attorneys' fees from Edison Learning for the *Viruet* litigation. Both parties seek summary judgment on this counterclaim.[6]

The ESA contains an indemnification provision that provides that Edison will compensate the School District for "costs and expenses (including . . . reasonable attorneys' fees . . . ) . . .

---

[6] There are actually two pending counterclaims, the other dealing with Edison Learning's failure to maintain insurance. ECF No. 12, at 8. However, the School District no longer pursues this claim and does not oppose Edison Learning's motion for summary judgment on that issue. *See* Def.'s Resp., ECF No. 57, at 1.

arising out of the willful misconduct or negligent act or omission of [Edison Learning] . . . ."
ECF No. 56, Ex. 1, at 47.

In order to maintain its breach of contract counterclaim, the School District must show the existence of a contract, a breach of that agreement, and resulting damages. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225-26 (3d Cir. 2003) (applying Pennsylvania law). Specifically, to show breach, the School District must prove that its harm "[arose] out of the willful misconduct or negligent act" of Edison. ECF No. 56, Ex. 1, at 47. To prevail in the instant suit, Edison's negligence or willful misconduct must be proven to the same extent as would have been required in the underlying *Viruet* trial. *See Exxonmobile Oil Corp. v. Lucchesi,* No. 03-cv-1625, 2004 WL 1699203, at *3 (E.D. Pa. July 29, 2004) (applying Pennsylvania law).

The School District does not demonstrate breach of the ESA because it fails to put forward any evidence to show that Edison Learning was negligent. The School District relies solely on the fact that its claims were dismissed in the *Viruet* litigation to establish the elements of its counterclaim. *See* ECF Nos. 49, 57, 58, 63. Its argument proceeds as follows: the School District moved for summary judgment in the *Viruet* case. The court dismissed all claims against the School District, and Edison settled the remaining claims against it. Therefore, the court determined that the School District was not negligent and that Edison Learning was negligent.

The School District now seeks to collaterally estop Edison from re-litigating the issue of its negligence. *See, e.g.,* ECF No 57, at 4-5. In Pennsylvania, collateral estoppel requires a "final adjudication on the merits" of the issue now precluded from re-litigation. *Office of Disciplinary Counsel v. Kiesewetter*, 889 A.2d 47, 50-51 (Pa. 2005). Because there was no final adjudication of Edison Learning's negligence, the School District's claim fails.

At no point in the *Viruet* litigation did the court determine that Edison Learning was negligent. Even conceding the School District's argument that summary judgment in its favor meant that the School District *was not* negligent,[7] it does not follow that Edison Learning *was* negligent.[8] For example, both Edison Learning and the School District may have fully complied with their duties and the assault may have been the sole fault of Viruet's attacker. Indeed, if dismissing the School District was sufficient to establish Edison's negligence, Viruet himself could have asserted collateral estoppel against Edison at trial.

Nor does the fact of settlement between Edison Learning and Viruet establish Edison Learning's negligence. Settlements are not final adjudications for the purposes of collateral estoppel. *See, e.g., Eighth N.-Val, Inc. v. William L. Parkinson, D.D.S., P.C., Pension Trust*, 773 A.2d 1248, 1253 (Pa. Super. Ct. 2001) (holding a "compromise to settle the dispute" meant "[t]here was, therefore, no actual litigation"); *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 326 (1955) (concluding there was "no question of collateral estoppel . . . because the case was never tried" and instead settled (internal quotation marks omitted)).

---

[7] This conclusion itself does not follow. The School District moved for summary judgment on two grounds. First, it argued that it had no duty to Viruet, and could not have been negligent. Second, it argued that even if it was negligent, that sovereign immunity barred any recovery for damages. *See* ECF No. 48, Ex. 5, at 6-19. The court did not specify the grounds on which it ruled, and either was adequate to dismiss the claims. *See* ECF No. 56, Exs. 18, 19. As the Third Circuit explains, "legal immunity from suit . . . does not compel a conclusion that [a defendant] was not negligent." *Kiewit E. Co. v. L&R Constr. Co.*, 44 F.3d 1194, 1200 (3d Cir. 1995) (applying Pennsylvania law).

[8] The School District relies heavily on *Mace v. Atl. Ref. Mktg. Corp.*, 785 A.2d 491 (Pa. 2001), to support its position. In *Mace*, the Pennsylvania Supreme Court held that a lessor was entitled to indemnification from its codefendant lessee after the lessor was dismissed from the lawsuit. The indemnification agreement in *Mace* required payment for all claims "arising out of the use, custody, or operation" of the leased property. *Id.* at 493. By contrast, the ESA only allows indemnification for damages "arising out of the . . . negligent act or omission of [Edison Learning]." ECF No. 56, Ex. 1, at 47. Indemnification was appropriate in *Mace* because the lessee did not, and could not, dispute that the underlying tort arose out of the "operation" of the leased property. *Mace*, 785 A.2d at 496. Here, there is no evidence in the instant suit or finding in the *Viruet* litigation of Edison Learning's negligence, and it remains very much a disputed issue.

Even if considered final, settlement of a claim is not an automatic admission of liability. *See, e.g.*, *City of Pittsburgh v. Rue*, 393 A.2d 1066, 1068 (Pa. Commw. Ct. 1978) (holding that because "[t]he settlement agreement here specifically did not contain any admission of liability" the plaintiff "must, therefore, prove some liability on the part of [defendant]"). Parties settle for many reasons, including to avoid costly and protracted litigation. *See, e.g.*, *Nationwide Ins. Co. v. Schneider*, 960 A.2d 442, 449 (Pa. 2008); *Taylor v. Solberg*, 778 A.2d 664, 667 (Pa. 2001) (noting parties "may agree for reasons of their own that they will not sue each other"). In fact, both the Federal and Pennsylvania Rules of Evidence prohibit using a settlement as evidence of liability. *See* Fed. R. Evid. 408; 42 Pa. Cons. Stat. Ann. § 6141(a).

The *Viruet* litigation cannot be used to establish Edison Learning's negligence. The School District does not point to any other evidence on this issue. Because of this, the School District has not met its burden of production with respect to an essential element of its counterclaim. Edison Learning is entitled to summary judgment on the School District's counterclaim.

## IV.   Conclusion

For the reasons above, I will grant the School District's motion for summary judgment on Edison Learning's claims. I will also grant Edison Learning's motion for summary judgment on the School District's counterclaim, and deny the School District's motion for summary judgment on its counterclaim.

s/Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:              Copies **MAILED** on _____ to: